# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LISA MARIE KOHNE-GAIER,<br>      Plaintiff, | )<br>)<br>) |
| v. | )  CAUSE NO.: 1:19-CV-351-JPK |
| ANDREW SAUL, Commissioner of<br>Social Security Administration,<br>      Defendant. | )<br>)<br>)<br>) |

## **OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lisa Marie Kohne-Gaier on August 13, 2019, and a Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 18], filed on February 13, 2020. Plaintiff requests that the October 24, 2018 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for an award of benefits or, in the alternative, for a new hearing. The Commissioner filed a response, and Plaintiff did not file a reply. For the following reasons, the Court remands this matter for further administrative proceedings.

## **PROCEDURAL BACKGROUND**

On July 1, 2016, Plaintiff filed an application for disability insurance benefits, alleging disability as of June 27, 2016. The claim was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on October 4, 2018. On October 24, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

2. The claimant has not engaged in substantial gainful activity since June 27, 2016, the alleged onset date.

3. The claimant has the following severe impairments: obesity; degenerative disk disease ("DDD") at L4-5, T5-8, and C5-6, status post surgery; major depression; and a generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; can occasionally balance, kneel, crouch; stoop and crawl; frequently reach overhead; must avoid all exposure to hazards; can understand, remember, and carry out simple instructions; can perform simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line; can adapt to routine changes in the workplace that are infrequent and easily explained; interact occasionally with supervisors, coworkers, and the general public; and may alternate between sitting and standing, at will, so long as she is not more than 15% off-task.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1971] and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 27, 2016, through the date of this decision.

(AR 12-20[2]).

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v.*

*Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges that the ALJ erred by (1) improperly crafting the RFC and (2) reaching a step five determination that was unsupported by substantial evidence.

### A. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p at *3; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to

assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff presents three arguments regarding the RFC. First, Plaintiff asserts that the ALJ failed to properly account for her mental limitations in the RFC. (Pl.'s Br. 8, ECF No. 18). Plaintiff explains that the ALJ found that she had moderate limitations in concentration, persistence, or pace, and then crafted an RFC limiting her to simple, routine, and repetitive tasks, without frequent or unexplained changes, without production rate pace, and with time limitations on interactions with others. *Id.* at 9 (citing AR 14, 15-16). Given her mental health history, fatigue, insomnia, and ongoing mood and other issues, Plaintiff asserts that these limitations do not account for her deficits in concentration, persistence, or pace. *Id.* And, perhaps more importantly, Plaintiff argues that there is nothing in the RFC that accounts for any degree of limitation in this area. *Id.* at 7, 8.

Second, Plaintiff argues that the ALJ included only quantitative limitations as to Plaintiff's interactions with others and failed to account for the quality of her interactions with others. *Id.* at 11. Plaintiff explains that this is especially problematic in light of records indicating irritability, easy agitation, frustration, fatigue, and restlessness. *Id.* Plaintiff thus contends that the ALJ erred by failing to include in the RFC a limitation to superficial interaction with others. *Id.*

Third, Plaintiff asserts that the ALJ improperly failed to include in the RFC any reaching and handling limitation beyond "frequently reach[ing] overhead." *Id.* at 12 (citing AR 15). Plaintiff argues that the ALJ ignored records establishing Plaintiff's carpal tunnel syndrome, and that the ALJ impermissibly cherry-picked evidence in reaching his conclusion that Plaintiff had not established such an impairment. *Id.* at 12-13. Plaintiff contends that the ALJ's error in failing to

6

account for all of Plaintiff's mental and physical impairments in the RFC is further compounded by the omission of such limitations in the hypotheticals posed to the Vocational Expert (VE). *Id.* at 8-9, 12.

In response, the Commissioner asserts that the ALJ provided an evidence-based assessment of what Plaintiff could and could not do in the workplace. (Def.'s Mem. 7, ECF No. 19). The Commissioner cites to cases where the Seventh Circuit Court of Appeals upheld RFCs where a plaintiff had moderate limitations in concentration, persistence, or pace, while further recounting evidence offered by the ALJ in support of his findings in the instant case.[3] *Id.* at 7-9. The Commissioner additionally argues that the social limitations included in the RFC are supported by the record. *Id.* at 9. The Commissioner notes that the ALJ relied upon records indicating that Plaintiff reported no issues in getting along with friends, family, neighbors, and authority figures. *Id.* (citing AR 14). The Commissioner further argues that Plaintiff has pointed to no evidence in the record supporting a limitation to superficial interaction with others. *Id.* at 10. Finally, the Commissioner argues that certain records cited by Plaintiff in support of her argument regarding carpal tunnel syndrome predate the period at issue in this appeal by almost four years. *Id.* at 12. The Commissioner points to records indicating Plaintiff reported that her problems with this impairment were resolved by surgery. *Id.* at 12-13. The Commissioner concludes that the record did not support further limitations in reaching and handling and that the ALJ adequately accommodated the limitations Plaintiff does have in the RFC. *Id.* at 13.

---

[3] The Commissioner additionally argues that Plaintiff misstates this functional area as "concentration, persistence, *and* pace," when the regulations refer to this area as "concentration, persistence, *or* pace." (Def.'s Mem. 6 n. 6, ECF No. 19 (citing 20 C.F.R. § 404.1520a(c)(3)). The Commissioner contends that Plaintiff has provided no support for the argument that the ALJ found moderate limitations in all three subparts of this functional area and, per the regulations, an ALJ need not account for limitations in each area if the record does not support it. *Id.* The Court is unpersuaded by this argument. The ALJ never referred to one of these subparts in singularity without the other two, and there is no indication in his decision that the ALJ ever considered or determined Plaintiff's potential limitations in each subpart separately, rather than in combination. (*See* AR 10-20).

The Court turns first to the issue of Plaintiff's limitations in concentration, persistence, or pace. The RFC in the instant matter limits Plaintiff to understanding, remembering, and carrying out simple instructions; performing simple, routine, and repetitive tasks, but not at a production rate pace such as an assembly line; adapting to routine changes in the workplace that are infrequent and easily explained; and interacting occasionally with supervisors, coworkers, and the general public. (AR 15-16). This language mirrors the limitations included in the hypotheticals posed by the ALJ to the VE. (AR 63).

"If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Zurawski*, 245 F.3d at 886. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner*, 627 F.3d 614, 620-21 (7th Cir. 2010)). The Seventh Circuit Court of Appeals has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *Yurt*, 758 F.3d at 858-59; citing *Stewart v. Astrue*, 561 F.3d 679, 684-85) (7th Cir. 2009); *see Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). This is because "simple, routine, and repetitive tasks" refer to "unskilled work," meaning "work that can be learned by demonstration in less than 30 days," and "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017).

In *Varga v. Colvin*, the Seventh Circuit Court of Appeals explained that, "[a]mong the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." 794 F.3d 809, 813-14 (7th Cir. 2015). The Court of Appeals further found that "'[f]ew if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence." *Id.* at 815. Finally, in *O'Connor-Spinner*, the Seventh Circuit Court of Appeals held that, in most cases, terms like "'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.3d at 620. This is because the ability to learn how to do a task of a certain complexity is not the same as the ability to do the given task over a sustained period of time. *Id.* Although no "specific terminology" is required, the hypothetical question posed to the VE must account in substance for the specific limitations of the claimant. *Id.* at 619 (noting that the Court of Appeals has let stand a hypothetical when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"); *see Varga,* 794 F.3d at 814; *Yurt*, 758 F.3d at 856, 858-59; *Stewart*, 561 F.3d at 684; *Craft*, 539 F.3d at 677-78.

Here, the ALJ found Plaintiff to have moderate limitations in concentration, persistence, or pace. (AR 14). Nonetheless, the ALJ failed to account for such limitations in his RFC and hypothetical questions posed to the VE. Under *Varga* and *O'Connor-Spinner*, limiting Plaintiff to "simple, routine, and repetitive tasks," infrequent and easily explained routine changes in the workplace, and occasional interaction with supervisors, coworkers, and the general public does not adequately account for Plaintiff's limitations in concentration, persistence, or pace. *See* 794 F.3d at 815; 627 F.3d at 620. The ALJ did not build a logical bridge between the evidence and the

9

RFC and hypothetical questions posed to the VE regarding Plaintiff's moderate limitations in concentration, persistence, or pace. This was error. *Beardsley*, 758 F.3d at 837.

The Commissioner offers a string citation for the proposition that, in cases involving moderate limitations in concentration, persistence or pace, the Seventh Circuit Court of Appeals has "upheld limitations similar to those in the present case." (Def.'s Mem. 7, ECF No. 19). The Court takes no issue with the argument that, in some cases, a similar RFC to the one at issue here would suffice. Nevertheless, such cases differ in that they do not involve a plaintiff arguing for specific limitations, where those limitations find support in the record, materially impact one's ability to perform work, and are not accounted for by the terms of the RFC or additional hypotheticals posed to the VE.

In *Jozefyk v. Berryhill*, the Seventh Circuit Court of Appeals found no error in the ALJ's assessment in a case involving moderate limitation in concentrations, persistence or pace. 923 F.3d 492, 497 (7th Cir. 2019). Yet, as the Court of Appeals more recently explained, its decision in *Jozefyk* "determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations." *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) (distinguishing *Jozefyk*, 923 F.3d at 498). Here, by contrast, the ALJ acknowledged Plaintiff's functional report of attention difficulties and the opinion of a state agency physician that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (AR 14, 15; *see* AR 73, 236). Given this record, *Jozefyk* cannot "save the shortfalls in the ALJ's analysis here." *Crump*, 932 F.3d at 571.

In *Dudley v. Berryhill*, the Court of Appeals rejected the plaintiff's argument that the ALJ failed to properly account for moderate limitations in concentration, persistence, and pace in the

10

RFC and hypothetical posed to the VE, noting that "[c]ritically, [the plaintiff] did not identify any limitations that the ALJ omitted and should have included in the hypothetical question." 773 Fed. App'x 838, 842 (7th Cir. 2019). In the instant matter, however, Plaintiff persuasively argues that the ALJ erred by failing to include limitations as to the *quality* of her interactions with others, rather than just the *quantity*. (Pl.'s Br. 11, ECF No. 18). The RFC noted that Plaintiff may "interact occasionally with supervisors, coworkers, and the general public." (AR 16). There is a difference between "occasional" contact and "superficial" contact: "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Wartak v. Colvin*, 2:14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). Plaintiff points to medical records indicating issues with irritability, easy agitation, frustration, and restlessness. (Pl.'s Br. 11, ECF No. 18 (citing AR 348, 820, 833)). Additionally, the state agency physician, to whose opinion the ALJ assigned great weight, opined that Plaintiff has moderate difficulties in maintaining social functioning. (AR 73). The state agency physician further noted that Plaintiff is able to "get along with others *superficially*." (AR 81 (emphasis added)). While the ALJ found that Plaintiff has moderate limitations in interacting with others, he did not endeavor to explain how a limitation to occasional interaction—with no limitation as to the quality of contact—adequately accounts for such difficulties. (AR 14-18). This was error, and Plaintiff's argument on this point distinguishes the instant case from *Dudley*.

In *Pytlewski v. Saul*, the Court of Appeals explained that, "[a]lthough we often reject the idea that a hypothetical confining the claimant to 'simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace,' such a hypothetical may be adequate when it restricts a claimant with 'stress- or panic-related' limitations." 791 F. App'x 611, 616 (7th Cir. 2019) (citations omitted).

The Court of Appeals found that the ALJ in *Pytlewski* had adequately tied the RFC to the evidence in the record by "tailor[ing] [the plaintiff's] workplace setting to accommodate for [the plaintiff's] anxiety, depression, and anger issues by limiting his interaction with people and restricting him from making high-stakes decisions." *Id.* The Court of Appeals further explained that the plaintiff "cite[d] no evidence that his moderate limitations in concentration, persistence, and pace prevent him from completing 'simple, routine and repetitive tasks' while being restrained to occasional interaction with others." *Id.* As explained above, Plaintiff in the instant matter does point to evidence suggesting that the RFC does not properly account for her limitations, and this contention is supported by the record. And, critically, the ALJ's explanation as to how the RFC adequately addresses Plaintiff's mental limitations is lacking.

Finally, in *Urbanek v. Saul*, the Court of Appeals explained that, "[t]hough the ALJ need not use any specific terminology, a hypothetical question must 'orient the [vocational expert] to the totality of a claimant's limitations,' including moderate deficiencies in concentration, persistence, or pace." 796 F. App'x 910, 914 (7th Cir. 2019) (citation omitted). Further, while "[o]ften, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace," the court will nonetheless "let stand an ALJ's hypothetical omitting the terms 'concentration, persistence [or] pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* (quotation marks and citation omitted). In upholding the RFC in *Urbanek*, the Court of Appeals noted that the ALJ had expressly relied on the testimony of an impartial medical expert who testified at the hearing and, further, that the ALJ had included all limitations proposed by the expert in both the RFC and hypothetical. *Id.* In the instant matter, by

12

contrast and as explained above, the ALJ neither addressed all limitations indicated in the state physician's opinion to which the ALJ assigned great weight nor seemingly included such limitations in the RFC and hypotheticals posed to the VE. *Urbanek* is thus also distinguishable from the issue currently before the Court.

As discussed above, Plaintiff complained of fatigue, insomnia, and ongoing mood issues. As noted by the ALJ, Plaintiff's ability to concentrate worsens when she is in pain and she has difficulty with stress and changes in routine. (AR 14). Ultimately, the "moderate limitation" in concentration, persistence or pace found by the ALJ is of such a nature that the change in routine Plaintiff would have from starting a job, coupled with a possible increase in pain, could impact her ability to work in a manner not accounted for in the RFC.

While it is perhaps true that a carefully worded RFC will result in an ALJ finding that a plaintiff is not disabled, the record at this point compels no such finding. It is not for this Court to decide whether, had the ALJ "considered the entire record, [the ALJ] might have reached the same result." *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that "the fact that the [ALJ], had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion").[4] This is especially true where, as discussed below, the numbers of jobs that could be performed by Plaintiff in the national economy was, at the very least, not clearly significant. Accordingly, remand is required for proper consideration of Plaintiff's limitations in concentration, persistence, or pace.

---

[4] And, to be clear, as the Commissioner did not raise a harmless error argument here, any such argument is waived. *See Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived." (Sykes, J. concurring)); *Zelinga v. Berryhill*, No. 1:17-cv-2429, 2018 WL 1788294, at *4 (S.D. Ind. Apr. 13, 2018) ("the Commissioner does not raise a harmless error argument, instead unavailingly challenging the polycythemia diagnosis itself. Any harmless error argument is therefore waived.").

The Court has addressed Plaintiff's argument regarding qualitative limitations on her interactions with others above and will not do so again here. However, the Court will briefly address Plaintiff's argument regarding her reaching and handling limitations. The ALJ stated that Plaintiff underwent surgery in November 2016, which resulted in a "good outcome." (AR 17). Plaintiff argues that the ALJ's determination relied on "the implicit claim" that this surgery resolved Plaintiff's upper extremity limitations. (Pl.'s Br. 14, ECF No. 18). Yet, as explained by Plaintiff, the surgery cited by the ALJ took place in 2011, not 2016. *Id.*; *see* AR 1248, 1266. It thus appears that, if the ALJ indeed impermissibly cherry-picked evidence in reaching his determination, he further failed to accurately recount the medical evidence in the record before him. Upon remand, the ALJ is instructed to consider all impairments alleged by Plaintiff as required by the regulations and, further, to properly consider the record. If the ALJ determines that such impairments exist, the ALJ is further instructed to include appropriate limitations in the RFC and questions posed to the VE.

### B. Step Five Determination

Plaintiff asserts that the ALJ's step five determination was unsupported by substantial evidence because the ALJ failed to cite to a significant number of jobs in the national economy that Plaintiff can perform. (Pl.'s Br. 5-6, ECF No. 18). Plaintiff notes that the ALJ found that Plaintiff can perform the requirements of the following jobs: office clerk, for which there are 20,000 jobs in the national economy; inspector, for which there are 10,000 jobs in the national economy; and production worker, for which there are 5,000 jobs in the national economy. *Id.* (citing AR 20). Plaintiff argues that the ALJ called these jobs "representative," but failed to offer evidence that the total number of jobs that she could perform would exceed 35,000. *Id.* at 6. Plaintiff notes that it is the Commissioner's burden to come forward with a significant number of

jobs that a plaintiff can perform in the existing economy, and thus concludes that the ALJ's determination that she could perform the requirements of jobs that exist in significant numbers in the national economy was unsupported by substantial evidence. *Id.*

The Commissioner counters that Plaintiff is incorrectly focused on the incidence of jobs as a percentage of total jobs in the nation, rather than on the *number* of existing jobs, which is contrary to the regulations. (Def.'s Mem. 4-5, ECF No. 19). The Commissioner further notes several cases in which the Seventh Circuit Court of Appeals has upheld findings that jobs existing in approximately the same or in far fewer numbers as the instant matter nonetheless existed in significant numbers in the national economy. *Id.* at 5 (citing *Collins v. Berryhill*, 743 Fed. App'x 21, 25 (7th Cir. 2018); *Lawrence v. Astrue*, 337 Fed. App'x 579, 583 (7th Cir. 2009); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993)). Consequently, the Commissioner asserts that the ALJ properly found that, considering Plaintiff's vocational factors and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff can perform. *Id.*

There appears to be no precedential decision in this jurisdiction upon which the Court may rely for a definitive answer on whether 35,000 jobs constitutes a significant number in the national economy. Significantly, however, the Commissioner's reliance on the above cases may not ultimately control. In *Lee*, the Seventh Circuit Court of Appeals found that 1,400 jobs is a significant number in the *metropolitan area* in which the plaintiff lived, not in the national economy. 988 F.2d at 792, 794. The Court of Appeals in *Lawrence*, in turn, relied on the holding in *Lee* to find that 15,000 job is a significant number in the *regional economy* in which the plaintiff lived. 337 Fed. App'x at 585, 586. And, further, while the Court of Appeals in *Collins* held that 55,000 jobs is a significant number in the national economy, this nonetheless seems like a notably higher number than the 35,000 jobs cited in the instant case. 743 Fed. App'x at 25.

The Court is left without a clear answer as to whether the incidence of jobs cited in the instant case constitutes a significant number in the national economy. However, because the Court has found that remand is necessary for other reasons, it is unnecessary to decide this issue. Nonetheless, upon remand, the ALJ is directed to properly determine the number of jobs whose requirements can be performed by Plaintiff and, critically, explain whether the incidence of the cited jobs meets the threshold for significance.

### C. Request for Award of Benefits

Plaintiff requests that the Court reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Remand for further proceedings, not an award of benefits, is required in this matter, as it is not clear on the current record that an award of benefits is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 30th day of September, 2020.

                                              s/ Joshua P. Kolar  
                                              MAGISTRATE JUDGE JOSHUA P. KOLAR  
                                              UNITED STATES DISTRICT COURT